UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:15-CV-00020-BR

| | | |
|---|---|---|
| MARY E. LYONS FELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| GATES COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion for summary judgment filed by defendant Gates County Board of Education ("the Board"). (DE # 40.) Also before the court is the Board's motion to strike the sur-reply filed by plaintiff Mary E. Lyons Felton. (DE # 49.) The motions raised have been fully briefed and are ripe for disposition.

## I.  FACTS

Plaintiff, who is African-American, has over 13 years of experience in the public education system, four years of experience as an assistant principal, and holds principal and curriculum instructional specialist licenses and certificates. (Felton Dep., DE # 40-2, at 27, 204.) This case arises from plaintiff's unsuccessful attempts to gain employment as an administrator in the Gates County School System after a newspaper article reported that plaintiff had filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against her former employer.

In February 2010, while she was employed as an assistant principal at Edenton-Chowan Schools ("ECS"), plaintiff applied for an assistant superintendent position in the Gates County School System. (Felton Dep., DE # 40-2, at 70; Russell Aff., DE # 40-3, ¶ 8.) Marianne

Russell, the then Director of Human Resources for Gates County Schools, reviewed all of the applications for this position to determine which applicants possessed the requisite qualifications for the position. (Russell Aff., DE # 40-3, ¶ 3.) Russell included plaintiff on the list of qualified applicants and forwarded plaintiff's application, along with the applications of all the other qualified candidates, to Dr. Zenobia Smallwood, who was superintendent of the Board at that time. (Id. ¶ 8.) Dr. Smallwood selected plaintiff to interview for the position. (Id.) Ultimately, Dr. Smallwood recommended that Earl Norfleet be hired, and he was appointed by the Board in July 2010. (Norfleet Aff., DE # 40-5, ¶ 2; see also Tab 10, DE # 44-9, at 2.)

In March 2010, a local newspaper reported that plaintiff had filed charges against ECS with the EEOC, alleging race discrimination and retaliation. (Felton Aff., DE # 44-6, ¶ 8; Felton Dep., DE # 40-2, at 202.) It is undisputed that Russell saw the article about plaintiff's employment dispute with ECS at some point in 2010. (Russell Aff., DE # 40-3, ¶ 23.) Plaintiff's employment with ECS ended in August 2010, and she has remained unemployed since that time. (Felton Aff., DE # 44-6, ¶¶ 7, 26.)

After becoming unemployed, plaintiff began applying for a number of vacant positions posted on the Board's website. (Felton Aff., DE # 44-6, ¶ 8.) During this period, the Board adopted a number of polices affecting the process of selecting candidates for interviews. On 6 June 2011, the Board issued a directive requiring that all qualified applicants who resided in Gates County be interviewed for any position for which they applied. (See Ex. 24, DE # 40-3, at 14.) Additionally, effective December 2011, policy required that all qualified internal candidates be given preference for vacant positions. (See Ex. 23, DE # 40-3, at 10-11.) In addition to these policy changes, there was a change in the Board's administration as Dr. Smallwood retired, and

2

was replaced by Dr. Barry Williams as superintendent in January 2012. (Williams Aff., DE # 40-4, ¶ 2.)

From 2011 to 2012, plaintiff submitted four applications for administrative positions in the Gates County School System, but was never selected for an interview. First, in 2011, plaintiff applied for the position of principal at Gates County High School. (Felton Aff., DE # 44-6, ¶ 7.) The applications for this position were reviewed by Russell to ensure completion and that each candidate met the required qualifications. (Russell Aff., DE # 40-3, ¶ 10.) Russell provided plaintiff's application, along with the applications of the other qualified applicants, to the administrator responsible for selecting interview candidates. (Russell Supp. Aff., DE # 47-1, ¶ 4.) Plaintiff later learned that position was offered to Tammi Ward, who plaintiff believed had inferior credentials because she had been employed as a counselor during the time plaintiff was an assistant principal at ECS. (Felton Aff., DE # 44-6, ¶ 7.) At the time Ward was hired for this position, she had one year of experience working as an assistant principal in the Gates County School System. (Russell Supp. Aff., DE # 47-1, ¶ 7; Felton Dep., DE # 40-2, at 215.)

Second, plaintiff applied for another principal position at Buckland Elementary School in 2012. (Russell Aff., DE # 40-3, ¶ 10.) Russell compiled a list of qualified applicants for this position, which included plaintiff, submitted their applications to Mr. Norfleet, who screened the applications and selected the candidates who would be interviewed. (Russell Aff., DE # 40-3, ¶ 9; Norfleet Aff., DE # 40-5, ¶ 4.) The interview committee, comprised of Dr. Williams, Mr. Norfleet, Russell, Eboni Branch, and Debbie Byrum, ultimately recommended Vivian Goldsby to the Board. (Russell Aff., DE # 40-3, ¶ 10.) Goldsby was then the assistant principal at a Gates County school and had worked in the school system for the previous six years. (Id.)

3

Third, plaintiff submitted an application on 11 April 2012 for the position of principal at Central Middle School. (Id. ¶ 19.) The fifteen applications submitted for the position were reviewed by Russell, who once again placed plaintiff on the qualified candidate list. (Id. ¶ 14; Russell Supp. Aff., DE # 47-1, ¶ 4.) Mr. Norfleet screened the applications of the qualified candidates, and selected the candidates who would be interviewed for the position. (Norfleet Aff., DE # 40-5, ¶ 4; Russell Supp. Affidavit, DE # 47-1 ¶ 4.) The successful candidate for the position, as recommended by the interview panel and Dr. Williams, was Tammy Boone. (Russell Aff., DE # 40-3, ¶ 15.) At the time of her selection, Boone was employed as an assistant principal in the Perquimans County Schools, was a Gates County resident, and had eight years of experience as a teacher in the Gates County Schools. (Id.)

Fourth, plaintiff applied for the position of Director of Elementary Education in 2012. (Id. ¶ 19.) The position was created when the role of Director of Curriculum was split into two positions—one for elementary education and one for secondary education. (Id.) Eleven applications were submitted for the position. (Id.) Russell provided plaintiff's application, along those applications of other qualified applicants, to Mr. Norfleet for screening. (Id.) Only two candidates were selected for interviews: (1) the successful candidate, Tawana Morales, who had held the position of Director of Curriculum for six years before the split; and (2) another internal, resident candidate with a master's degree and licensure as a principal. (Id. ¶¶ 19-20.) None of the applicants for the Director of Elementary Education position were Gates County residents except the two who were interviewed. (Id. ¶ 21.)

On 7 June 2012, plaintiff sent an email to Dr. Williams and Russell "regarding not receiving an invitation to interview for any of the advertised administrative positions for the 2012-2013 school year . . ." (Ex. 5, DE # 40-3, at 9-10.) In the email, plaintiff asked Dr.

4

Williams to provide her with a written response identifying "the specific reason(s) she was not interviewed" and the "correlation between the review of the application materials and the decision NOT to interview [her]" in light of her qualifications and experience. (Id. at 10.)

At the time he received the email, Dr. Williams was not familiar with plaintiff or her background. (Williams Aff., DE # 40-4, ¶ 7.) Russell informed Dr. Williams of plaintiff's prior applications. (Russell Aff., DE # 40-3 ¶ 24.) Additionally, Russell told Dr. Williams about plaintiff's prior employment dispute with ECS. (Id.; Williams Aff., DE # 40-4, ¶ 12.) Dr. Williams and Russell subsequently conferred with legal counsel about whether to respond to the email, and decided not to respond. (Id.) They also decided that plaintiff's background would not keep her from being considered for future positions, and decided that plaintiff met the required qualifications for the assistant principal position that had become vacant due to Goldsby's promotion to Buckland Elementary. (Id.; Russell Aff., DE # 40-3, ¶ 24.) Plaintiff initially accepted an interview for the position. (Russell Aff., DE # 40-3, ¶¶ 24-25; Felton Dep., DE # 40-3, at 141.) However, on the day of the interview, plaintiff sent Russell an email stating that she did not feel comfortable attending the interview. (Felton Dep., DE # 40-2, at 141-42.)

Plaintiff later filed a charge of discrimination with the EEOC. (Id. at 154.) On 27 November 2013, the EEOC issued a determination finding there was reasonable cause to believe that plaintiff was retaliated against when she was denied an opportunity to interview for the assistant principal and Director of Elementary Education positions. (See DE # 1-1, at 2.) After conciliation between the parties was unsuccessful, the EEOC issued plaintiff a right to sue letter on 31 December 2014. (See id. at 1.) Subsequently, on 10 April 2015, plaintiff filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, alleging that she was denied interviews and the opportunity to be hired for various administrative level positions in

5

retaliation for her participation in a protected activity. (DE # 1.) On 1 August 2016, the Board moved for summary judgment on plaintiff's retaliation claim pursuant to Rule 56 of the Federal Rules of Civil Procedure. (DE # 40.) Plaintiff filed a memorandum in opposition, (DE # 44), to which the Board replied, (DE # 47). Plaintiff subsequently filed a response to the Board's reply on 19 September 2016. (DE # 48.) On 23 September 2016, the Board filed a motion to strike plaintiff's response to its reply. (DE # 50.)

## II. ANALYSIS

In her complaint, plaintiff alleges that her non-selection for interviews for the principal and Director of Elementary Education positions was retaliation for her prior EEOC complaint. The Board moves for summary judgment on the grounds that plaintiff fails to make a prima facie case of retaliation or, in the alternative, that plaintiff fails to show that the Board's legitimate, non-discriminatory reasons for the non-selections were pretextual.

**A. Motion to Strike**

The Board moves to strike plaintiff's response to its reply, arguing that it violates Local Civil Rules 7.1(f) and 56. A surreply is typically not allowed under the local rules. See McMillan v. General Elec. Co., No. 7:09-CV-160-FL, 2010 WL 3672243, at *2 (E.D.N.C. July 12, 2010) ("Local Civil Rule 7.1 limits briefing for a motion to a memorandum in support, a response in opposition, and a reply brief. "). The court notes that plaintiff's surreply was the first opportunity she had to respond to Russell's supplemental affidavit, in which Russell clarified her role in reviewing plaintiff's applications, and that her response addresses her position on the statements in the supplemental affidavit. As plaintiff is proceeding *pro se*, in an abundance of caution to ensure that her arguments are fully presented, the court will take her surreply into consideration.

**A. Motion for Summary Judgment**

    **1. Standard of Review**

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court must view the facts and all reasonable inferences in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).

Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010) (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir. 1992)). The party asserting that a fact cannot be or is genuinely disputed must cite to particular materials in the record, including depositions, documentary evidence, affidavits and declarations. Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48.

## 2. Analysis

Title VII makes it unlawful for an employer to discriminate against an applicant for employment because she has opposed an unlawful employment practice. See 42 U.S.C. § 2000e-2(a)(1)-(2). Where a plaintiff relies on indirect evidence to prove a claim of retaliation, she must utilize the three-part burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Lettieri v. Equant Inc., 478 F.3d 640, 649-50 (4th Cir. 2007). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). Once the plaintiff has met the burden of establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged action. Burdine, 450 U.S. at 252-53; Lettieri, 478 F.3d at 646. If the employer establishes a legitimate, non-retaliatory reason for its action, the burden shifts back to the plaintiff to show the employer's proffered reason was a pretext for retaliation. Lettieri, 478 F.3d at 646-47. Showing pretext requires a plaintiff to produce evidence showing that the employer's explanation is "unworthy of credence" or other forms of circumstantial evidence demonstrating retaliation. Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002).

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff has established the first element of her

case as she engaged in a protected activity in 2010 when she filed a complaint with the EEOC against ECS. With respect to the second element, the parties agree that a retaliation claim may be based upon the existence of a claim against a different employer. (See Def.'s Mem., DE # 41, at 15.) It is also undisputed that plaintiff was subjected to an adverse employment action by her non-selection for interviews for the four positions at issue. However, the parties dispute whether plaintiff has established the final element by showing a causal connection between the protected activity and her non-selections.

To prove a causal connection, a plaintiff must show that the employer took the adverse employment action "*because* the plaintiff engaged in a protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Id. Specifically, a plaintiff must establish that the relevant decision-maker had knowledge of the protected activity at the time of the alleged retaliation. See Baquir v. Principi, 434 F.3d 733, 748 (4th Cir. 2006) (holding that plaintiff must be able to show that the "relevant officials" were aware of his protected activity at the time the alleged retaliation occurred in order to sustain a retaliation claim); see also Shell v. Tyson Foods, Inc., No. 5:15-CV-00037-RLV-DCK, 2016 WL 4490716, at * 4 (W.D.N.C. Aug. 25, 2016) ("[W]hen reviewing a plaintiff's evidentiary proffer, it is imperative that the court also consider whether the ill-motivated supervisor was, in reality, the ultimate decision-maker concerning the adverse employment action under review." (citations omitted)).

As to the third element, plaintiff contends that causation can be inferred from the fact that she was offered an interview for an administrative position in 2010, but was not offered

9

case as she engaged in a protected activity in 2010 when she filed a complaint with the EEOC against ECS. With respect to the second element, the parties agree that a retaliation claim may be based upon the existence of a claim against a different employer. (See Def.'s Mem., DE # 41, at 15.) It is also undisputed that plaintiff was subjected to an adverse employment action by her non-selection for interviews for the four positions at issue. However, the parties dispute whether plaintiff has established the final element by showing a causal connection between the protected activity and her non-selections.

To prove a causal connection, a plaintiff must show that the employer took the adverse employment action "*because* the plaintiff engaged in a protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Id. Specifically, a plaintiff must establish that the relevant decision-maker had knowledge of the protected activity at the time of the alleged retaliation. See Baquir v. Principi, 434 F.3d 733, 748 (4th Cir. 2006) (holding that plaintiff must be able to show that the "relevant officials" were aware of his protected activity at the time the alleged retaliation occurred in order to sustain a retaliation claim); see also Shell v. Tyson Foods, Inc., No. 5:15-CV-00037-RLV-DCK, 2016 WL 4490716, at * 4 (W.D.N.C. Aug. 25, 2016) ("[W]hen reviewing a plaintiff's evidentiary proffer, it is imperative that the court also consider whether the ill-motivated supervisor was, in reality, the ultimate decision-maker concerning the adverse employment action under review." (citations omitted)).

As to the third element, plaintiff contends that causation can be inferred from the fact that she was offered an interview for an administrative position in 2010, but was not offered

9

interviews for a number of vacant administrative positions after Russell became aware that she had filed an EEOC complaint against ECS. The Board argues that this inference is negated by the fact that there was a change in the administration, and, consequently a change in the relevant decision-makers after plaintiff was offered the opportunity by Dr. Smallwood. Plaintiff does not dispute that there was change in the administration in the Gates County School System after she was selected to interview for the assistant superintendent position. Instead, plaintiff appears to argue that these changes were irrelevant because Russell, who had knowledge of plaintiff's protected activity and was consistently involved in the hiring process from 2011 to 2012, was acting as the discriminating official who screened plaintiff out from interview and employment opportunities.

Plaintiff repeatedly claims in her materials that Russell "intentionally blocked" her applications for consideration by the "interview committee" after learning that plaintiff had previously engaged in a protected activity. (Pl.'s Mem., DE # 44, at 11-13, 17-18, 20.) In her affidavit, Russell admitted that she learned about plaintiff's employment dispute with ECS in 2010. (Russell Aff., DE # 40-3, ¶ 23.) However, Russell denied participating in the screening process, or using her knowledge of plaintiff's background to have plaintiff screened out from any position at Gates County Schools. (Id.) Russell stated that she forwarded all of plaintiff's applications to "the Superintendent, Assistant Superintendent, another administrator, or some other combination of individuals who decide[d] who to interview." (Id.; Russell Supp. Aff., DE # 47-1, ¶ 4.) In response to the affidavit, plaintiff makes inferences based on her personal beliefs and conclusory allegations about hiring practices to support her claim that Russell intentionally screened her out from receiving interviews for the positions of principal and Director of Elementary Education. However, plaintiff offers no evidence to challenge Russell's statements

10

Case 2:15-cv-00020-BR   Document 52   Filed 01/31/17   Page 10 of 13

that she submitted all of plaintiff's applications to the appropriate selecting officials for consideration.

Plaintiff appears to argue that, even without direct evidence of Russell's participation in the screening process, causation can be inferred because Russell's involvement as Human Resources Director tainted the review process. The Fourth Circuit Court of Appeals has recognized that there are circumstances where a plaintiff can rely on the actions of a biased subordinate to establish retaliation. See Hill, 354 F.3d at 291. However, a plaintiff who rests a Title VII claim upon the motivations of a subordinate employee "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." Id.

As noted above, Russell's statement that she was not the individual responsible for selecting interview candidates has gone unrebutted. In outlining her responsibilities as the Director of Human Resources, Russell stated that was responsible for reviewing applications to decide which candidates met the required qualifications for each position, and that she sometimes categorized the candidates by whether they met just the basic requirements or had special qualifications. (Russell Aff., DE # 40-3, ¶ 3.) Although Russell may have categorized candidates based on their qualifications, there is no evidence that the selecting officials uncritically relied on Russell's categorizations in deciding who to interview. Furthermore, there is no evidence that Russell tried to impute her knowledge concerning plaintiff's prior employment dispute to any of the selecting officials as a way to prevent plaintiff from being interviewed and hired. By plaintiff's own admission, Russell did not inform Dr. Williams of plaintiff's dispute with ECS until June 2012, after the decisions at issue had been made. (Pl.'s Mem., DE # 44, at 8, 20.) There is also no evidence in the record that Mr. Norfleet had

11

knowledge of plaintiff's EEOC complaint at the time her applications were screened. Although Mr. Norfleet did not recall screening plaintiff's application for any position, he stated that he would not have used an applicant's prior claims against an employer in deciding whether to interview them or employ them. (Norfleet Aff., DE # 40-5, ¶ 7.) Therefore, viewing the facts in the light most favorable to plaintiff, plaintiff has failed to demonstrate that Russell was the actual decision-maker, or that she was principally responsible for plaintiff's non-selections.

While the court is sympathetic to plaintiff's feelings of retaliation and helplessness as she has been unable to secure employment over the past six years despite her skills and experience, the law requires that plaintiff make a showing sufficient to establish the existence of the essential elements of her case in order to overcome summary judgment. Although Russell was well aware of plaintiff's EEOC complaint against ECS, the unrebutted evidence establishes that interview candidates were selected by independent decision-makers who did not know that plaintiff had filed an EEOC charge at the time of the decisions at issue. Absent evidence showing that Russell influenced plaintiff's non-selections, the court concludes that plaintiff has failed to establish the necessary causal connection between her protected activity and the adverse employment action against her. Because plaintiff fails to make a prima facie case of retaliation, summary judgment on her retaliation claim is appropriate.

### III. CONCLUSION

For the reasons stated herein, the Board's motion to strike, (DE # 49), is DENIED. The Board's motion for summary judgment, (DE # 40), is GRANTED. The Clerk is DIRECTED to

12

Case 2:15-cv-00020-BR   Document 52   Filed 01/31/17   Page 12 of 13

enter judgment in favor of the Board and close this case.

This 31 January 2017.

_____
W. Earl Britt
Senior U.S. District Judge